CHRISTIAN FEDDERSEN et al., Appellants, v. E. C. MATTHIESEN, Administrator, et al., Appellees.

**APPEAL AND ERROR:** What Notice Brings Up. An appeal 1 *"from the judgment and decree entered in said cause against the plaintiffs,"* leaves no part of said judgment as the law of the case on appeal—brings up the decree in its entirety.

**WILLS:** Life Estate (?) or Naked Use (?)  A devise which pro-2 vides that devisee

(a) shall live upon the real estate,

(b) shall have the right to make any use of it which he may desire,

(c) shall have all proceeds therefrom,                       ₁

(d) shall pay all taxes and insurance and make all repairs,

(e) shall pay interest on a specified indebtedness,

(f) shall support a sister so long as she does his housework,

(g) may sell, on a price consented to by other heirs, and

(h) shall, *"after the property is sold,"* have $1,000 out of the proceeds, the balance to be divided among other heirs,

does not grant a life estate,—grants nothing but a *use* for a specified compensation,—but does grant the $1,000 to devisee after *any* authorized sale, howsoever made.

**WILLS:** Unreasonableness. The claim of unreasonableness nec-3 essarily falls, unless the will and the proper extraneous matters reveal the facts from which unreasonableness may be deduced.

**WILLS:** Construction Leading to Intestacy. The law is abhorrent 4 of any construction of a will which will lead to even partial intestacy.

*Appeal from Clinton District Court.*—A. P. BARKER, Judge.

JANUARY 20, 1919.

APPEAL from construction given by the district court to the will of August D. Feddersen.—*Affirmed.*

*Chas. W. Kepler & Son,* for appellants.

*Skinner & Co.,* for appellees.

SALINGER, J.—I. Appellants contend that so much of the decree below as declares that August E. Feddersen, son of the testator, took a life estate in some of the realty owned by the testator, has become the law of the case. They base this contention upon the claim that neither party has appealed from that holding. As true as it is that failure to appeal from part of a decree may make that part unassailable, is it that nothing can become the law of the case unless there be no appeal. True, appellees have perfected no cross appeal. But, since one party did appeal, the question remains whether said holding is the law of this case. It is material what that appeal was. The abstract recites that an appeal was perfected by the appellants by means of serving a notice of appeal "from the judgment and decree entered in said cause against the plaintiffs." Section 4114, Supplement to the Code, 1913, permits an appeal either *in toto* or one "from some specific part thereof, defining such part." Appellants did not proceed under this permission. They brought up the decree in its entirety, which included the holding that this son took a life estate. Appellants meet this situation by the statement that, if appellees were dissatisfied with so much of the decree as found that the son had a life estate, they should have appealed. We may assume they had the right to do this, but, notwithstanding, are of opinion that said holding is not the law of the case, because appellants by general appeal removed that part of the decree to this court for review. That appellants now see an advantage in agreeing with the trial court upon that holding has no bearing on whether such

1. APPEAL AND ERROR: what notice brings up.

holding has become the law of the case. For the purposes f determining whether it is the law of the case, the controlling question is whether such holding was reviewable after appellants had taken their appeal. When that holding was by them removed to this court, it could not become unassailable until after affirmance here; and we think that, though appellees have not appealed, it is open to them to meet any claim on part of the appellants which they urge for their advantage, and which is based upon the assertion that the will at bar granted a life estate.

This brings us to whether the will did grant a life estate. It is and must be conceded it does not do so in terms. The exact language is that the son August "has the exclusive right and use" of certain real estate; that "he is to live there and make any use of it that he desires, and to keep all proceeds from any business that he may run in above mentioned real estate, but he must pay all taxes, insurance and repairs on the place, and the interest on all money owing by me, and he must support my daughter, Amanda Feddersen, so long as she stays with him and does his house work." Next comes a provision that the son may sell, upon a price consented to by the other heirs, and that, "after the property is sold," he is to have $1,000 out of the proceeds thereof. While the son survived the father, he has since deceased, and in his lifetime, evinced no intention to sell; and the property has since been sold to pay debts, on application by the administrator of the estate of the father. We are of opinion that no life estate was created, though the son took possession of and used the property, and that what was devised was the right to use the property upon the payment exacted by the will for the use of the right. The provision does not, in essence, differ from giving the right to lease upon the payment of stipulated rent. Granting, for the sake of argument, that, though the life-

2. WILLS: life estate (?) or naked use (?)

time of the son is not mentioned, the testator intended the use might continue during the life of the son, it still remains true that what was devised is not, in truth, a life estate, because the son might have been ousted from the use in his lifetime, upon failure to make the payments exacted by the will; or the lands might be sold to pay debts. We find nothing in *Webb v. Webb,* 130 Iowa 457, 460, that aids appellants.

It may not be amiss to add that, if it were assumed the will did create a life estate, such assumption would profit the appellants nothing.  They use the claim that a life estate was created, for the purpose of argu-

3. WILLS: unrea-          ing that the grant was so valuable as that
   sonableness.

it is an unreasonable construction of the will to hold that the testator gave not only the life estate, but $1,000 additional from the proceeds of selling the property.  While it would not follow that the will must be construed as appellants contend, even if it were proved that allowing this son the additional $1,000 was over-liberality, it is certainly true that the devise of the $1,000 does not give support to the argument of the appellants, where, as here, they have failed to adduce any evidence of the value of the use granted.  The only thing that appears on that point is the inference that may be drawn from the fact that, during the year in which the son survived the father, the son continued to use the property.  That may be evidence that he thought the use had *some* value, but it is no evidence that its value was so much greater than the price paid for the use as to prove the testator could not have intended to give more than the use.  If the intention to allow the additional $1,000 is clear, then, in the absence of a challenge of the competency of the testator, the courts could not interfere because the allowance might, in fairness to the claims of others, have been smaller.  Be that as it may, whatever effect upon the question before us an unreasonable allowance

might have, we have no such question where, as seen, there is no evidence that the provision complained of *is* unreasonable. We conclude that the provision of the will granting this son $1,000 from the proceeds of selling the property may not be disregarded on the ground either that the son August was given a life estate, or, if given one, it had such value as that we must hold the testator intended to give the son nothing but the alleged life estate.

II. The will, after giving to the son August the right to use said real estate, provided further that, if the son at any time desired to sell said property, he might do so by first getting the consent of the "rest of my children," and could sell only at a price satisfactory to those children; and that, "after the property is sold, $1,000 is to be given to my son August." Then follow provisions allotting the proceeds (presumably above this $1,000) to other heirs. It will be observed that, if the provision to give the son August $1,000 is held to be operative only upon a sale made by him in his lifetime, on consent of and at a price satisfactory to his brothers and sisters, then the will has no provision as to what shall be done with the proceeds of a sale other than one upon consent of the co-heirs. All agree that, where a testament is made, the court will, if it may in reason be done, avoid a construction of the will which results in either total or partial intestacy. The least that must result if the appellants be sustained is that, though the testator attempted to provide what should be done with the proceeds of a sale of his property, he failed to make any disposition of proceeds unless they came from a sale by the son August, on consent of the other children. It will not meet the necessities of the appellants' case to say there was no intention to give August anything because the use of the lands granted him was so valuable as to exclude the idea that the father intended to make further provision for him

4. WILLS: construction leading to intestacy.

in case the land was sold, because this argument is met by the fact that, although the use of the land was granted, the father still thought the son ought to have $1,000 if a sale on consent was made. Such sale might not be made though the son had survived the father for 20 years, and it is difficult to understand why the testator should have granted the son this additional $1,000, despite the use of the land granted, if the sale was a consent sale,—difficult to understand why, if the use were deemed a bar to the additional allowance, such allowance was not withheld, no matter what the nature of the sale was. It is difficult to understand why the father should feel more liberal to this son as to the proceeds of one kind of sale rather than another. Starting, then, with the fact that, notwithstanding the grant of the use of the lands, the father was minded to give August an additional $1,000 on some sale, and applying the doctrine that intestacy is not favored, we have little difficulty in reaching the conclusion that this son was to have $1,000 from the proceeds of any sale, provided such sale was an authorized one. A sale on consent of the co-heirs was one that was authorized. A sale sanctioned by the law of the land for the purpose of paying debts is also an authorized sale. As said, we are unable to reason out why the testator should have devised $1,000 to this son in the proceeds of a sale authorized by consent, and yet have intended that, if the law sold the same land, and, for the sake of argument, as much was realized from that sale as from one authorized by all the heirs, that the $1,000 should not go to the son. Nothing indicates that the testator based his bounty upon a preference for one authorized sale over another authorized sale. It follows that, in our opinion, the trial court correctly construed the will, in so far as it decreed that the estate of August E. was entitled to $1,000 from the proceeds of the sale had on the application of the father's administrator. We reach this conclusion the more

readily because of the position taken by the appellants, which is, not that the will does not authorize this particular payment unless it be from the proceeds of the particular sale described in the will, but that, by reason of the will and the use of said property by the son August, he and his estate are barred from participating in the proceeds of the administrator sale at all.

The appellants expressly plant themselves upon the proposition that the trial court should have ruled that, by taking possession and use on the terms prescribed by the will, and by failing to exercise his right to sell with the consent of the other heirs, the son is in the position of the holder of a life estate, and no more, and that this life estate has been terminated by his death; and that therefrom it follows, not only that the devise of $1,000 is of no effect, but that the proceeds should be divided equally between the heirs at law other than August; that, in some way, the son made an election that bars him from participating as an heir. We have already pointed out that such a position assumes, without warrant, the very question in issue: whether the testator intended that giving the use upon payment should exclude not only the payment of the additional $1,000, but bar the right to participate as an heir. Without going into the question whether or not the son could not make an election because the right to sell the land for debt existed, we have to repeat that using the land on the terms of payment exacted by the will, and failing to initiate any sale upon consent of the co-heirs, could in no view destroy the standing of the son as an heir. · What we might hold if it were claimed here that, though the estate of August could participate as the representative of the heir August, but could not have the specific legacy of $1,000 because the conditions fixed by the will for vesting that have not arisen, it is unnecessary to discuss. Such a contention, as said, is not made. No modification of the decree below

is asked. We are compelled to choose between the decree which applies the provision of $1,000 out of the proceeds of sale to the administrator's sale, and the contention of the appellants that, because August E. took the use of the land under the will, on the terms of payment provided by the will, he ceased to be an heir. We have sufficiently indicated why we think the position taken by the trial court is much more tenable than the one advanced for reversal. We think that, in affirming, we do not overlook, but, on the contrary, apply, well-settled rules of law, which are: First, that intestacy shall be avoided, if avoidance is in reason possible; and, next, that the intent controls, and must be arrived at by doing all that reason will permit to give effect to every line of the will. See *Scott v. Scott,* 132 Iowa 35, 36; *Moran v. Moran,* 104 Iowa 216, 222; *Gilmore v. Jenkins,* 129 Iowa 686, 691; *Boekemeier v. Boekemeier,* 157 Iowa 372; *Wheeler v. Long,* 128 Iowa 643.

The dispute over whether the review here is *de novo* need not be settled, because it is an immaterial one. The sole question on the appeal is one of law; and such a question is determined by the same rule, whether it arise on the law or the equity side.

Other contentions and arguments are subsidiary, and are, in effect, disposed of by what we have said. In our judgment, the decree below should be—*Affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.